THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PLANNED PARENTHOOD OF THE GREAT NORTHWEST AND THE HAWAIIAN ISLANDS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALEX M. AZAR II and UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br> Defendants. | CASE NO. C18-1627-JCC <br><br> ORDER |

This matter comes before the Court on Plaintiff's motion for a preliminary injunction (Dkt. No. 13) and motion to seal (Dkt. No. 16). Having thoroughly considered the parties' briefing, the relevant record, and heard the parties' oral argument, the Court hereby GRANTS the motion for preliminary injunction (Dkt. No. 13) and GRANTS the motion to seal (Dkt. No. 16) for the reasons explained herein.

## I. BACKGROUND

Plaintiff Planned Parenthood of the Great Northwest and the Hawaiian Islands (hereinafter "Plaintiff") is a not-for-profit organization that provides reproductive health care and family planning health services through its 27 centers in Alaska, Hawaii, Idaho, and Washington. (Dkt. No. 14 at 1–2.) Plaintiff partially funds its services with federal grants issued through the

Title X program, which is administered by Defendant U.S. Department of Health and Human Services ("HHS"). (*Id*. at 2; Dkt. Nos. 14-1 at 2, 14-2 at 2.) Title X provides hundreds of millions of dollars each year to HHS "to make grants to and enter into contracts with public or nonprofit private entities to assist in the establishment and operation of voluntary family planning projects." 42 U.S.C. § 300(a).

Since 1995, Plaintiff has received Title X grant funds to provide services in Hawaii. (Dkt. No. 14 at 2.) While initially a subgrantee to the State of Hawaii, in Fiscal Year 2017 (hereinafter "FY17"), Plaintiff competed against the State for and received a Title X direct grant to provide family planning services in two Hawaiian counties. (*Id*.) That year, Plaintiff received approximately 35% of the Title X grant funds awarded to the State of Hawaii. (*Id*.)

In May 2018, Plaintiff submitted a 187-page application for a FY18 Title X grant (hereinafter the "FY18 Application" or the "Application") to provide services in Honolulu and Maui Counties, Hawaii. (*Id*.) As with its FY17 bid, Plaintiff competed against the State of Hawaii for Title X funds and was again awarded a grant. (*Id*.) The FY18 grant would fund services through March 2019, and Plaintiff intended to compete for a FY19 grant. (*Id*. at 6.)

In an email dated September 4, 2018, HHS informed Plaintiff that it was reviewing a Freedom of Information Act ("FOIA") request seeking disclosure of the FY18 Application. (Dkt. Nos. 14 at 2, 14-1 at 2.) HHS wrote that "[t]he purpose of this letter is to provide you with an opportunity to participate in our decision-making process," regarding whether the FY18 Application, or portions of it, should be withheld from disclosure. (Dkt. No. 14-1 at 2.) HHS instructed Plaintiff to identify any information within the FY18 Application that might be exempted from disclosure as "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." (*Id*.) (citing FOIA Exemption 4, 5 U.S.C. § 552(b)(4)).

Plaintiff responded with an 11-page letter objecting to the disclosure of the FY18 Application. (*See* Dkt. No. 14-2.) Among other things, Plaintiff asserted that HHS was not

authorized to disclose the FY18 Application because (1) it had not demonstrated a sufficient basis for disclosure under FOIA, (2) disclosure would be improper in light of the impending competition for FY19 Title X grants, and (3) large portions of the FY18 Application were exempted from disclosure under FOIA because it contained confidential commercial information, the release of which would cause serious harm to Plaintiff's ability to compete for future Title X grants. (*See generally id.*) With its response, Plaintiff submitted a detailed declaration outlining how various sections of the FY18 Application should be withheld from disclosure based on Exemptions 4 and 6 of FOIA. (*Id*. at 13–18.) Plaintiff also suggested detailed redactions that should be made, if HHS were to disclose the FY18 Application. (*Id*.)

On November 2, 2018, HHS sent Plaintiff an email responding to its objections to disclosure. (*See* Dkt. No. 14-3.) Notwithstanding Plaintiff's objections, HHS stated that "certain information within the subject records that you requested to be withheld is not protected by any FOIA Exemption and will be released." (*Id*. at 3.) HHS listed the sections of the FY18 Application that it concluded were not exempted from disclosure under FOIA. (*Id*.) (For example: "The Project Abstract Summary" and the "Project Narrative.") HHS did not specifically explain why the listed sections were not exempted from disclosure under FOIA, other than to say "our office does not agree with the majority of your redactions," and that it did not believe that Plaintiff had "established that the release of some information will . . . cause substantial harm to [Plaintiff's] competitive positions." (*Id*. at 2, 4.)

HHS did, however, agree to redact several portions of the FY18 Application in accordance with FOIA Exemptions 4 and 6. (*Id*. at 3–4.) HHS also revealed, in contrast to its initial correspondence, that "[a]lthough this office *has not received* a FOIA request for records of the awarded contract/grant, this office continues to participate in proactive the [*sic*] disclosure process, as it relates to the FOIA." (*Id*. at 4) (emphasis added). Citing to FOIA, 5 U.S.C. § 552(a)(2)(D), HHS wrote that "[w]hen institutions and individuals accept government funds, there is an expectation by the public, as embodied in the FOIA, that the government must shed

light on how taxpayer funds are being used." (*Id.*)

HHS closed by stating that "[o]ur negotiations with you regarding the release of the grant materials are concluded." (*Id.* at 4.) HHS stated that a copy of the FY18 Application "will be released as expunged on November 9, 2018, unless you obtain an injunction from a Federal district court barring disclosure." (*Id.*)

On November 7, 2018, Plaintiff filed a complaint seeking declaratory and injunctive relief, asserting that Defendants' release of the FY18 Application violated the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 706(2)(a), (A). (Dkt. No. 1 at 12.) The following day, Plaintiff sought a temporary restraining order ("TRO"), to enjoin Defendants from releasing the FY18 Application as planned.[1] (Dkt. No. 13.) On November 8, 2018, the Court held a hearing and granted Plaintiff's motion for TRO. (Dkt. Nos. 20, 22.) The Court temporarily enjoined Defendants from disclosing the FY18 Application until November 30, 2018,[2] and established a briefing schedule for the parties to be heard regarding the entry of a preliminary injunction. (Dkt. No. 25.)

Defendants responded to Plaintiff's motion for a preliminary injunction as follows:

> HHS opposes Plaintiff's request for a Preliminary Injunction on the grounds that it is not necessary because HHS agrees to voluntarily extend the Temporary Restraining Order until December 31, 2018. As set forth in the accompanying declaration of Garfield Daley, HHS is withdrawing the November 2nd letter at issue in Plaintiff's motion. Plaintiff will shortly issue a new letter. Once this new letter is issued, HHS anticipates requesting expedited briefing on the merits.

(Dkt. No. 30 at 1–2.) In the accompanying declaration, HHS represents that "to address the concerns raised by Plaintiff in litigation, the Department has decided to rescind the November 2,

---

[1] Plaintiff's motion sought both a TRO and a preliminary injunction. (*See* Dkt. No. 13.) Plaintiff also filed a motion to seal a copy of the redacted FY18 Application that HHS planned to release. (Dkt. No. 16.) The Court has reviewed that document (Dkt. No. 18) and addresses Plaintiff's motion to seal in Part II.B of this order.

[2] The Court initially ordered that the TRO be in place until November 16; however, it subsequently found good cause to extend the temporary injunction until November 30. (Dkt. No. 25) (citing Federal Rule of Civil Procedure 65(b)).

2018 letter and issue a revised response to Plaintiff's September 19, 2018 objections to the Department's PDN." (Dkt. No. 31 at 3.) HHS further committed to delay "the release of Plaintiffs' redacted grant applications until December 31, 2018, at 5:00 PM Eastern Time." (*Id.*)

In reply, Plaintiff argues that the Court should enter a preliminary injunction because Defendants have not substantively responded to its motion. (Dkt. No. 32 at 1.) Plaintiff further argues that Defendants should not be allowed to supplement the administrative record with new justifications for why the FY18 Application can be disclosed. (*Id.* at 2.)

The Court concludes that it is appropriate to rule on Plaintiff's motion for preliminary injunction. Defendants have failed to respond to the merits of Plaintiff's requested injunctive relief, yet are trying to dictate the very terms of such relief by setting a deadline—December 31, 2018—by which it will release the FY18 Application unless the Court resolves the merits of this lawsuit. What's more, Defendants wish to use the intervening period to prepare a new response to Plaintiff's objections—a fact which, when combined with Defendants' failure to substantively respond to Plaintiff's motion for preliminary junction, implies that HHS' November 2, 2018 letter was deficient. Defendants' proposal to voluntarily extend the TRO is DENIED.

## II. DISCUSSION

### A. Plaintiff's Motion for Preliminary Injunction

In seeking a preliminary injunction, the moving party must establish "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1085 (9th Cir. 2014). Issuance of a preliminary injunction is "an extraordinary remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter*, 55 U.S. at 24).

//
//

1.  Likelihood of Success on the Merits

Plaintiff argues that it is likely to succeed on the merits because Defendants' decision to disclose the FY18 Application is both arbitrary and capricious and contrary to law. Injunctive relief can be warranted where a movant raises "serious questions" going to the merits, and demonstrates that the other factors supporting an injunction tip sharply in its favor. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–36 (9th Cir. 2011).

*a. Arbitrary and Capricious*

Plaintiff argues that HHS' disclosure of the FY18 Application is arbitrary and capricious because there is not a legally sufficient basis for proactive disclosure under FOIA, and even if there was, HHS did not provide a reasoned explanation for its disclosure decision. (Dkt. No. 13 at 10–11.) An agency action is "arbitrary and capricious" when:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A district court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Based on the record before the Court, there are several grounds demonstrating that HHS failed to provide a reasoned explanation for its decision to disclose the FY18 Application. First, although HHS ultimately stated that its decision was part of a "proactive disclosure process," undertaken pursuant to 5 U.S.C. § 552(a)(2)(D), it is not clear that HHS satisfied the statute's requirements for proactive disclosure. *See* 5 U.S.C. § 552(a)(2)(D) (allowing proactive disclosure of records "that have been released to a person" pursuant to a FOIA request). As Plaintiff notes, it is unaware of the FY18 Application ever being previously sought or released pursuant to a FOIA request. (Dkt. No. 14-2 at 5.)

The Court is particularly skeptical of HHS' proactive disclosure justification, given that it initially represented to Plaintiff, falsely, that the agency had received a FOIA request seeking the FY18 Application. (Dkt. No. 14-1 at 2) (September 4, 2018 email: "[HHS] has received a request for information seeking disclosure of certain materials provided to HHS by your organization."). HHS' misrepresentation of the actual basis for its disclosure decision strikes the Court as a stalking horse for the true reason behind the agency's actions.

Second, HHS appears to have provided little more than conclusory explanations for its rejection of Plaintiff's objections to disclosure of the FY18 Application. Although Plaintiff provided HHS with a detailed declaration explaining how various sections of the Application were exempted from disclosure under FOIA, HHS responded with little to no explanation for why it would nevertheless disclose the sections. As one example, HHS stated that it would disclose the Application's nearly 75-page "Project Narrative" without addressing, or directly rejecting, Plaintiff's detailed objection that the section contained confidential commercial information that was exempt from disclosure under FOIA Exemption 4. (*Compare* Dkt. No. 14-2 at 15–16, *with* Dkt. No. 14-3 at 2–4.) HHS' failure to adequately address this and other of Plaintiff's objections in its November 2, 2018 letter demonstrates that the agency failed to provide a reasoned explanation for its disclosure decision. *See Pac. Coast Fed'n of Fishermen's Assns. v. U.S. Bureau of Reclamation*, 426 F.3d 1082, 1091 (9th Cir. 2005) ("It is a basic principle of administrative law that the agency must articulate the reason or reasons for its decision.")

Plaintiff has raised serious questions going to the merits of whether HHS' decision to disclose the FY18 Application was arbitrary and capricious. Therefore, Plaintiff has demonstrated a likelihood of success on the merits regarding this claim.

                b.      *Contrary to Law*

Plaintiff also asserts disclosure of the FY18 Application is contrary to law because it would violate FOIA Exemption 4 and the Trade Secrets Act, 18 U.S.C. § 1905. (Dkt. No. 13 at

14.) Under FOIA, an agency must withhold records if their disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A). Pursuant to FOIA Exemption 4, an agency is prohibited from releasing information that includes "trade secrets and commercial or financial information obtained from a person and [that are] privileged or confidential." 5 U.S.C. § 552(b)(4). Further, the Exemption 4 protections are coextensive with the Trade Secrets Act, which protects from disclosure any information which "concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association." 18 U.S.C. § 1905; *see Pac. Architects & Engineers Inc. v. U.S. Dep't of State*, 906 F.2d 1345, 1347 (9th Cir. 1990) (noting that Exemption 4 and the Trade Secrets Act are coextensive and where a statute bars disclosure under FOIA, "the agency does not have discretion to release it.").

Exemption 4 applies where the relevant records contain "(1) commercial and financial information, (2) obtained from a person or by the government, (3) that is privileged or confidential." *Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1194 (9th Cir. 2011) (citation omitted). Commercial or financial information is "'confidential' for purposes of Exemption 4 if disclosure of the information is likely to either: (1) impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *Id.* (citing *GC Micro Corp. v. Def. Logistics Agency*, 33 F.3d 1109, 1112 (9th Cir. 1994), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016)).

Plaintiff has sufficiently demonstrated that the FY18 Application—even with the redactions proposed by HHS—contains confidential commercial information, the release of which would cause substantial harm to Plaintiff's competitive position in obtaining future Title X grants. Plaintiff has a clear commercial interest in the information contained in the FY18 Application because that information is used to obtain grant funding in a competitive bidding process. *See Torres Consulting & Law Grp., LLC v. Nat'l Aeronautics & Space Admin.*, 666 F.

ORDER
C18-1627-JCC
PAGE - 8

App'x 643, 644 (9th Cir. 2016) ("Information will result in substantial competitive injury if it would allow competitors to estimate, and undercut, [the firm's] bids." (citation and internal quotation marks omitted). The FY18 Application includes detailed information regarding, among other things: Plaintiff's objectives and goals for the grant project, the communities and number of patients the project proposes to serve, and proprietary information regarding Plaintiff's pricing methodologies. (Dkt. No. 14 at 3–5.)

In addition, the disclosure of this confidential commercial information could harm Plaintiff's competitive position in future Title X bids. If Plaintiff's competitors, such as the State of Hawaii, were to have access to its FY18 Application—which was successful in securing more than $500,000 in funding—they could use the information to compete against Plaintiff, thereby making it less likely that Plaintiff would receive the same level of grant funding in the future. (*See* Dkt. No. 14 at 2.) This is especially true when considering that the competition for FY19 Title X grants, in which Plaintiff intends to participate, has just opened for bids. (*Id*. at 6.)

Plaintiff has raised serious questions going to the merits of whether HHS' decision to disclose the FY18 Application was contrary to law. Therefore, Plaintiff has demonstrated a likelihood of success on the merits regarding this claim.

2. <u>Likelihood of Suffering Irreparable Harm</u>

Plaintiff asserts that it will suffer irreparable harm if HHS discloses the FY18 Application because, in the absence of injunctive relief, its competitors will forever have access to its confidential commercial records. In order to demonstrate a likelihood of suffering irreparable harm, the moving party "must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) (citation omitted). "A threat of irreparable harm is sufficiently immediate to warrant preliminary injunctive relief if the plaintiff 'is likely to suffer irreparable harm before a decision

on the merits can be rendered.'" *See Winter*, 555 U.S. at 22 (citing 11A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2948.1 (2d ed. 1995)).

As discussed above, Plaintiff has demonstrated that release of the confidential commercial information contained in the FY18 Application would put it at a competitive disadvantage in future rounds of Title X bidding. *See supra* Part II.A.3. Such a disadvantage could result in Plaintiff losing grant funding in Hawaii and other states. Moreover, once the FY18 Application is made public, Plaintiff would have no recourse to prevent its competitors from using the information in future grant applications. For those reasons, Plaintiff has demonstrated a likelihood of suffering irreparable harm that is sufficiently immediate to warrant a preliminary injunction.

### 3. Balance of the Equities and Public Interest

Plaintiff argues that disclosure of its FY18 Application would cause it significant harm, while an injunction would "pose little, if any, harm to HHS," and serve the public interest. (Dkt. No. 13 at 17–18.) When the government is a party to an injunctive action, the balance of the equities and public interest merge into a single inquiry. *Drakes Bay Oyster Co.*, 747 F.3d at 1092. The district court must "balance the interests of all parties and weigh the damage to each . . . ." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980). The Ninth Circuit has recognized that "the public interest favors applying federal law correctly." *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011) (citation omitted).

Plaintiff has demonstrated that the balance of equities sharply tips in its favor. As described above, Plaintiff has shown that the failure to grant injunctive relief could result in its immediate and irreparable harm by making public its confidential commercial information. Conversely, Defendants have provided no substantive response to Plaintiff's motion, leaving the Court to guess as to how HHS would be harmed by the issuance of a preliminary injunction. At the very least, an injunction would serve to protect the status quo while the Court decides the

1  merits of Plaintiff's lawsuit. Preservation of the status quo seems especially appropriate in this
2  case, because, as HHS has admitted, its planned disclosure of the FY18 Application was not even
3  made pursuant to a FOIA request. The same can be said about an injunction being in the public
4  interest—the Court sees a clear public interest in correctly applying FOIA, and the Government
5  has not explained how a delay in its "proactive disclosure process" would harm the public. For
6  those reasons, the Court concludes that both the balance of the equities and the public interest
7  weigh in favor of a preliminary injunction.

### B.     Plaintiff's Motion to Seal

Plaintiff asks that a copy of the redacted FY18 Application (Dkt. No. 18) remain sealed for the pendency of this litigation. (Dkt. No. 16 at 2.)

The Court starts from the position that "[t]here is a strong presumption of public access to [its] files." W.D. Wash. Local Civ. R. 5(g). This presumption applies particularly to "dispositive pleadings," which includes exhibits attached to such pleadings. *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). To overcome this presumption, there must be a "compelling reason" for sealing that is "sufficient to outweigh the public's interest in disclosure." *Id.*

Plaintiff asks that a copy of its FY18 Application remain sealed for the same reasons that it seeks a preliminary injunction preventing HHS from disclosing the Application—disclosure of Plaintiff's confidential commercial information would cause it irreparable harm. (Dkt. No. 18 at 2.) For the same reason a preliminary injunction is appropriate to protect against irreparable harm, Plaintiff has demonstrated a compelling reason to maintain its FY18 Application under seal that outweighs the public's general interest in access to the Court's records. *See supra* Part II.A.2. Therefore, the Court GRANTS Plaintiff's motion to seal (Dkt. No. 18).

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction (Dkt. No. 13) is GRANTED. Plaintiff has demonstrated a likelihood of success on the merits on both of its claims

that Defendants' actions were arbitrary and capricious and contrary to law. Additionally, Plaintiff has demonstrated that it will likely suffer irreparable harm in the absence of injunctive relief, that the balance of hardships weighs in its favor, and that a preliminary injunction is in the public interest.

Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them are PRELIMINARILY ENJOINED from publicly disclosing Plaintiff's most recent and successful competitive application for Title X funds. This preliminary injunction shall remain in effect during the pendency of this case or until further order of the Court.

The Court further ORDERS that Plaintiff's motion to seal (Dkt. No. 16) is GRANTED. The Clerk is DIRECTED to maintain Docket Numbers 18 and 18-1 under seal until further order of the Court.

DATED this 29th day of November 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE